No. 24-5502

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

LARRY S. SMITH,

*Plaintiff-Appellant,*

- v. -

NEWPORT UTILITIES,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
Case No. 2:22:cv-00112

---

### BRIEF OF PLAINTIFF-APPELLANT LARRY S. SMITH

---

Ben W. Hooper, III, Esq.
CAMPBELL & HOOPER
335 East Main Street
Newport, Tennessee 37821
(423) 623-3082
bwh3rd@yahoo.com

Jeffrey C. Taylor, Esq.
TAYLOR LAW FIRM
365 West Third North Street
Morristown, Tennessee 37814
(423) 586-6812
jeff@taylorlawfirmtn.com

*Counsel for Plaintiff-Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 26.1, counsel for Plaintiff-Appellant certifies that no party to this appeal is a subsidiary or affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome. Plaintiff-Appellant is an individual.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................ i

TABLE OF AUTHORITIES ................................................ v

STATEMENT IN SUPPORT OF ORAL ARGUMENT .................... vii

STATEMENT OF JURISDICTION ......................................... 1

STATEMENT OF ISSUES ................................................. 1

STATEMENT OF THE CASE ............................................. 2

    A.   Procedural Posture ............................................. 2

    B.   Statement of Facts ............................................. 3

        1.   Smith successfully performed many jobs for Newport Utilities during his 33 year employment ................................ 3

        2.   Smith was qualified to perform the Bucket Foreman and all Lineman related jobs, with reasonable accommodation at the time of termination .................................................. 4

        3.   Newport Utilities unilaterally places Smith on Medical Leave, despite ability to perform essential functions of his most recent job and other jobs ................................................ 9

        4.   Newport Utilities did not sustain any hardship related to Smith being on medical leave from November up to the date of termination, May 11, 2021 ...................................... 10

        5.   Dr. Bishop's April 27, 2021 fitness for duty evaluation removed the restriction regarding operation of utility vehicles requiring CDL and operating power equipment, etc. ........................ 11

6.  Newport Utilities did not consider Dr. Arvo Kanna's report or opinion in its decision to terminate/separate Smith ........................ 12

7.  Newport Utilities failed to provide Smith reasonable accommodation to work ........................ 12

8.  In spite of Newport Utilities knowing Smith desires to return to work, his work history and the skill set he possesses, Newport Utilities, without engaging in any interactive dialogue with Smith, sends a letter on May 11, 2021 ending Smith's 33 year employment, with notice of an "option of retiring in lieu of termination," which was devastating to him ........................ 16

SUMMARY OF ARGUMENT ........................ 18

ARGUMENT ........................ 20

I.   Standard of Review ........................ 20

II.  The District Court Erred By Weighing The Evidence and Concluding That Smith Was Not Otherwise Qualified For Employment With Newport Utilities As Smith Posed A "Direct Threat Of Harm To Himself And Others," And That Newport Utilities Could Not Have Made A Reasonable Accommodation That Would Eliminate Smith's Direct Threat of Harm Because of the Essential Functions of "The Position," And That Newport Utilities "Clearly" Satisfied It's Obligation of Engaging In The Interactive Process With Smith, Thus Granting Summary Judgment On Smith's Disability Discrimination Claim, As A Jury Could Reasonably Conclude That Newport Utilities Discriminated Against Smith Based On His Disability, And Refused To Accommodate Smith, And Did Not Engage In the Interactive Process As Required By The Americans with Disabilities Act. ........................ 20

1.  A District Court Must, in evaluating a Motion for Summary Judgment, Make all Reasonable Inferences Consistent with the Evidence and in Favor of the Nonmoving Party and Refrain from Weighing Evidence to reach its Conclusions. ........................ 20

2.  A Reasonable Inference of the evidence is that Smith was not a Direct Threat of Harm to himself or others based on the medical opinions in possession of and/or actually considered by Newport Utilities as of the May 11, 2021 separation of Smith's employment, thus the facts do not support Summary Judgement. ... 21

3.  Under <u>Fisher v. Nissan North America, Inc.</u>, 951 F.3d 409 (6th Cir. 2020), the Failure to Accommodate Claim shows Direct Evidence of Discrimination, as Newport Utilities violated the ADA by failing: (i) to provide Smith reasonable accommodation, and (ii) to engage in any interactive process before the termination ("retirement") of Smith, thus a bar to summary judgment. ............ 25

   (i)  Newport Utilities Failed to Reasonably Accommodate Smith. ......................................................... 25

   (ii)  The Direct Evidence test required the District Court to find Newport Utilities' firing of Smith without engaging in an Interactive Dialogue regarding available jobs, modifications to jobs and schedules, and without informing Smith of the contemplated firing violated the Americans with Disabilities Act. ......................................................... 28

CONCLUSION .................................................................... 30

CERTIFICATE OF COMPLIANCE ..................................... 31

CERTIFICATE OF SERVICE ............................................... 31

ADDENDUM ..................................................................... 32

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .................. 21

Backhaus v. Gen. Motors LLC,
    54 F. Supp. 3d 741, 751 (E.D. Mich. 2014) ................................. 24

Bentkowski v. Scene Magazine,
    637 F.3d 689 (6th Cir. 2011) .............................................. 20

Blanchet v. Charter Communications, LLC,
    27 F.4th 1221 (6th Cir. 2022) ............................................. 1

Ferrari v. Ford Motor Co.,
    826 F.3d 885 (6th Cir. 2016) .............................................. 25

Fisher v. Nissan North America, Inc.,
    951 F.3d 409 (6th Cir. 2020) .......................................... 25, 29

Hostettler v. College of Wooster,
    895 F.3d 844 (6th Cir. 2018) .......................................... 28, 29

Keith v. Cnty. of Oakland,
    703 F.3d 918 (6th Cir. 2013) ........................................ viii, 1

Kleiber v. Honda of Am. Mfg.,
    485 F.3d 862 (6th Cir. 2007) .............................................. 29

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ................. 21

Monette v. Electronic Data Systems Corp.,
    90 F.3d 1173 (6th Cir. 1996) ........................................... 2, 25

Mosby-Meachem v. Memphis Light, Gas & Water Div.,
    883 F.3d 595 (6th Cir. 2018) .............................................. 29

Siewertsen v. Worthington Indus. Inc.,
    783 F. App'x 563 (6th Cir. 2019) ................................................. 24

**Statutes, Rules, Constitutional Provisions**

28 U.S.C. § 1331 ............................................................................. 1

29 U.S.C. § 2601, *et seq.* .............................................................. 1

29 C.F.R. § 1630.2(n)(3) .............................................................. 26

42 U.S.C. § 12101 *et seq.* ............................................................. 1

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant Larry S. Smith ("Smith") respectfully requests oral argument to aid the Court in its analysis of the important, unresolved issues presented in this appeal. The District Court's ruling that Newport Utilities did not fail to accommodate Smith is in error based on the applicable statute and standards of law. The Court's error includes, but is not limited to the opinion that Newport Utilities established a direct threat defense by considering the most current medical knowledge, best available objective evidence and upon an expressly individualized assessment of Smith's then current ability to safely perform the essential functions of the jobs available. The District Court's opinion is not based on the medical opinion solely relied upon by Newport Utilities, and the fact Newport Utilities did not request or consider any direct threat opinion or evidence related to all the available jobs for which Smith was qualified.

The District Court also failed to consider all of the evidence in the record and appropriately analyze the actual and practical essential functions of Newport Utilities jobs of Bucket Forman, Lineman, Wastewater Maintenance Technician, and Customer Service Representative. Had the District Court considered the record evidence showing overtime and standby time were not actually required and that such employees could refuse each of those "essential functions" without penalty, per evaluating physicians Drs. Conway and Bishop, Smith would be

overwhelmingly qualified for each of those available positions. The District Court therefore erred in its opinion that there was no reasonable accommodation Newport Utilities could have made to eliminate Smith being a direct threat to himself and his fellow employees.

The District Court erred in its opinion that Newport Utilities "clearly participated in an individualized inquiry when determining" Smith was "disqualified for employment," despite the District Court recognizing Newport Utilities' admitted failure to engage in any dialogue or deliberation with Smith or otherwise interact with Smith to discuss and attempt to identify an effective and reasonable way to accommodate Smith's disability (i.e. job duties, job restructuring, minimal training to perform an available job, etc.). The Sixth Circuit holdings support this error having opined that the interactive process requires employers to permit employees the opportunity to respond to concerns. Keith v. Cnty. of Oakland, 703 F. 3.d 918 (6th Cir. 2013). In lieu of the interactive process, Newport Utilities simply gave Smith the option to be terminated or "voluntarily retire,"- this finding of an ADA compliant interactive process is respectfully erroneous.

**STATEMENT OF JURISDICTION**

The Jurisdiction of this Court is undisputed, under 28 U.S.C. § 1331 (federal question), as this case comes as a timely appeal as a matter of right from a decision of the United States District Court, Eastern District of Tennessee (Greeneville), for a case involving the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (Smith's appeal is based solely on the ADA claim).

**STATEMENT OF ISSUES**

The following issues are presented for review in this appeal:

1.    Did the District Court err in concluding that Newport Utilities' internal discussions only among its employees, to the exclusion of Smith, meets the ADA requirements and this Court's prior rulings that the employer must engage the employee and provide the employee the opportunity to respond to accommodation concerns ("the interactive process"). Blanchet v. Charter Communications, LLC, 27 F.4th 1221 (6th Cir. 2022); Keith v. Cnty. of Oakland, 703 F.3d 918 (6th Cir. 2013).

2.    Did the District Court err in determining Smith was a direct threat to himself and other employees regarding the bucket foreman job and lineman job, and that Newport Utilities could not have made a reasonable accommodation that would eliminate the direct threat of harm of allowing Smith to return to work, and

in failing to determine whether Newport Utilities is estopped from using ambiguous after-acquired evidence?

3.     Did the District Court err in determining Smith was a direct threat to himself and other employees regarding the available jobs of Wastewater Maintenance Technician and Customer Service Representative, and that Newport Utilities could not have made a reasonable accommodation that would eliminate the direct threat of harm of allowing, Smith to return to work in those positions or jobs considering neither Dr. Bishop nor Dr. Conway nor Dr. Kanna made any assessment of Smith's ability to perform those jobs?

4.     Did the District Court err in failing to require Newport Utilities to prove with specific evidence that Smith's requested accommodation was an undue burden, when this Court has ruled that "the employer bears the burden of proving that the accommodation is unreasonable and imposes an 'undue hardship' on the employer." Monette v. Electronic Data Systems Corp., 90 F.3d 1173,1186 (6th Cir. 1996).

## STATEMENT OF THE CASE

### A.     Procedural Posture

On September 19, 2022 Smith filed a Complaint against Newport Utilities claiming that it unlawfully discriminated against him in the termination of his 33 year employment on the basis of disability in violation of the ADA, and in

violation of the FMLA (the FMLA claim is not appealed). (Complaint, RE 1, Page ID # 5). The District Court entered a Memorandum Opinion and Order in favor of Newport Utilities at the summary judgment stage on April 17, 2024. (Memorandum Opinion and Order, RE 31, Page ID # 600).

On May 17, 2024 Smith timely filed his notice of appeal with the US District Court, for the Eastern District of Tennessee, Greeneville Division (Sixth Circuit Court of Appeals). (Notice of Appeal, RE 34, Page ID # 651, 652). Smith appeals the District Court's Order and respectfully requests that his claim be remanded to the trial court with instructions to hold a trial on the ADA claim.

### B.    Statement of Facts

### 1.    Smith successfully performed many jobs for Newport Utilities during his 33 year employment.

During Smith's employment with Newport Utilities from August 15, 1988 through May 31, 2021 he worked the following jobs: stock room, groundsman, Lineman, performed electrical jobs, line crew and flagging, journeyman Lineman, and Bucket Foreman. (Frisbee Dep., RE 22-2, Page ID # 342-343; Smith Dep., RE 22-1, Page ID # 299-300 & 305-308). Newport Utilities considered Smith a good employee. (Frisbee Dep., RE 22-2, Page ID # 340).

Within Newport Utilities' Electrical Division, the following jobs existed: meter services technicians, engineering technician, groundsman, Lineman,

apprentice Lineman, journeyman Lineman, foreman Lineman (bucket foreman), substation technician, equipment operator, and right-of-way supervisor. (Frisbee Dep., RE 22-2, Page ID # 344).

Newport Utilities operates three bucket trucks in the Electrical Division and the line construction trucks that are larger than the bucket trucks along with numerous pickup trucks, cars, four-wheelers and side-by-sides. (Frisbee Dep., RE 22-2, Page ID # 345-346). Newport Utilities electrical employees are not required to have a CDL to drive a pickup truck, a side-by-side or a four-wheeler. (Frisbee Dep., RE 22-2, Page ID # 346-347). Each employee assigned to a service truck at Newport is required to possess a valid CDL license. (Smith Dep., RE 17-1, Page ID # 111). Smith worked as a Bucket Foreman with the Electrical Division of Newport Utilities. (Smith Dep., RE 17-1, Page ID # 105-106, 113; Frisbee Dep., RE 22-2, Page ID # 343). Mr. Smith retained his CDL throughout 2020 and 2021 without any revocation or restriction. (Frisbee Dep., RE 22-2, Page ID # 350, 351; Smith Dep., RE 17-1, Page ID # 128).

**2.     At the time of termination, Smith was qualified to perform the Bucket Foreman and all Lineman related jobs, with reasonable accommodation.**

During Smith's employment, the schedule for a Bucket Foreman during a two-week period was 36 hours the first week and 44 hours the second week.

(Woods Dep., RE 22-3, Page ID # 423).  Each Lineman could be called in to work any time there was a power outage or other emergency. (Smith Dep., RE 17-1, Page ID # 120, 138-141).

The job description for Smith's most recent job, the Bucket Foreman, notes the following essential functions:

- "work on standby rotation and be available to work during emergency power restoration."

- "must be able to work extended hours beyond normal shift, evenings, weekends, and holidays during emergencies."

- "must be able to report to work for emergency purposes in 30 minutes or less."

- "subject to overtime on short notice."

(Smith Dep., RE 17-1 Page ID # 138-141 at Nos. 23, 25, 26 & 27).

While only one employee can drive the truck at a time, each must possess a license for safety reasons. (Frisbee Dep., RE 22-2, Page ID # 348).  Either employee working on the bucket truck was allowed and qualified to work in the bucket or on the ground. (Frisbee Dep., RE 22-2, Page ID # 349).

Smith's staring episodes began in the 2009 – 2010 time period. (Smith Dep., RE 22-1, Page ID # 312-313). Smith saw his primary provider – Dr. Conway – who gave him a note stating he was able to return to work. (Complaint, Ex. 2, RE

1-2, Page ID # 10).   Smith's supervisor, Kevin Woods was satisfied with Dr. Conway's response at the time and put Smith back on the schedule. (Woods Dep., RE 22-3, Page ID # 428).   Between April 2020 up to August 6, 2020, Smith performed the Bucket Foreman job successfully. (Frisbee Dep., RE 22-2, Page ID # 353-354).

Immediately prior to August 6, 2020, Smith was working as a Bucket Foreman without any work restrictions. (Frisbee Dep., RE 22-2, Page ID # 352-353; Complaint, Ex. 2, RE 1-2, Page ID # 10).   On August 6, 2020, Smith was working on the ground during a standby week, and fell over; a "mayday" alert was called, and Smith was taken by ambulance to the local hospital. (Smith Dep., RE 22-1, Page ID # 318-319).   Smith was diagnosed with heat exhaustion or heat syncope. (Frisbee Dep., RE 22-2, Page ID # 354-355; Smith Dep., RE 22-1, Page ID # 317).   On August 6, 2020 the emergency room released Smith to return to work full duty without restrictions. (Frisbee Dep., RE 22-2, Page ID # 356, 358).

Newport Utilities did not honor the emergency room release to return Smith to work, but instead instructed him to undergo a fitness for duty examination with Newport Utilities physician, Dr. Bishop. (Frisbee Dep., RE 22-2, Page ID # 356-357).   Dr. Marilyn Bishop served as Newport Utilities medical review officer for its drug and alcohol policy. (Frisbee Dep., RE 22-2, Page ID # 358).

Subsequent to the August 6, 2020 release to return to work and instead of allowing Smith to return to work, Newport Utilities instructed Smith to take leave under the FMLA, and have his primary care physician, Dr. Conway complete the FMLA paperwork. (Frisbee Dep., RE 22-2, Page ID # 359, 360-361, 406-409). The only job description Newport Utilities provided to Dr. Conway was the Bucket Foreman. (Frisbee Dep., RE 22-2, Page ID # 361). Dr. Conway completed the medical certification, taking Smith out of work from August 6, 2020 through September 10, 2020. (Frisbee Dep., RE 22-2, Page ID # 410-413).

On September 23, 2020, Dr. Conway sent Newport Utilities another letter advising that Smith could return to work in mid-October and citing that sleep deprivation and/or physical exhaustion precipitated the seizure episodes, and that when Smith returned, he could work up to 12 hours a day and up to 55 hours a week. (Smith Dep., RE 22-1, Page ID # 326). Dr. Conway's September 23, 2020, letter further advised Newport Utilities that a neurologist felt that Smith could drive and operate equipment "at this time." (Smith Dep., RE 22-1, Page ID # 326; Frisbee Dep., RE 22-2, Page ID # 364-366).

As of September 23, 2020 Smith was under no restrictions on his ability to drive any type of vehicle or operate any type of equipment at Newport Utilities. (Frisbee Dep., RE 22-2, Page ID # 366). Based on Dr. Conway's September 23, 2020 letter to Newport Utilities Smith was able to perform the essential functions

of the Bucket Foreman position including up to 19 hours of overtime during his 36 hour week and 11 hours of overtime during his 44 hour week. (Frisbee Dep., RE 22-2, Page ID # 369-370). Nonetheless, Newport Utilities, via HR Manager Connie Frisbee made the decision to not to bring Smith back to work as a Bucket Foreman, or any other position despite Smith could work his normally scheduled hours. (Frisbee Dep., RE 22-2, Page ID # 366-367).

On October 19, 2020 Dr. Conway documented and Newport Utilities received (via Frisbee) Smith's release to return to work effective October 22, 2020 allowing work up to 12 hours per day and up to 55 hours a week, and no other limitations. (Frisbee Dep., RE 22-2, Page ID # 371-372, 414-415). Dr. Conway's release of Smith to return to work on October 22, 2020 triggered Newport Utilities' Frisbee's October 21, 2020 emails to Dr. Bishop's office concerned about Dr. Conway's October 19, 2020 release to return to work. (Frisbee Dep., RE 22-2, Page ID # 372-373, 414-415). Specifically, Dr. Bishop's office email to Frisbee on October 21, 2020 states: "Connie [Frisbee] contacted me in regards to Larry Smith … wanting to know the RTW status. … Dr. Bishop has made notes on his neurology consult and his PCP [Dr. Conway] is trying to return him to work. … Dr. Bishop can see him [Smith] so that we can make that recommendation on his return to work?" (Frisbee Dep., RE 22-2, Page ID # 374, 414-415). Dr. Bishop was not Smith's PCP or occupational physician, but was Newport Utilities'

handpicked physician. (Frisbee Dep., RE 22-2, Page ID # 375-376).   Again, Newport Utilities did not honor Dr. Conway's October 19, 2020 return to work restrictions. (Frisbee Dep., RE 22-2, Page ID # 375).

**3.      Newport Utilities unilaterally places Smith on Medical Leave, despite ability to perform essential functions of his most recent job and other jobs.**

In October 2020 Frisbee did not engage in any meetings or conversations with Smith regarding his ability to return to work. (Frisbee Dep., RE 22-2, Page ID # 377).   Frisbee sent Smith a letter dated November 9, 2020 with Dr. Bishop's November 6, 2020 Examination Report, noting Smith can perform the essential job functions, with the same hours of work restrictions as Dr. Conway, along with additional restrictions of "no operation of Company vehicles or power equipment," medial leave recommended and a return appointment to be considered in five months. (Frisbee Dep., RE 22-2, Page ID # 378, 380; Smith Dep., RE 22-1, Page ID # 327-328).   After receiving Dr. Bishop's November 6, 2020 work restrictions and medical leave recommendation regarding Smith, Frisbee did not engage in any face-to-face or other communications with Smith regarding his ability to perform the essential functions of the Bucket Foreman or other any other positions based upon Dr. Conway's and/or Dr. Bishop's restrictions. (Frisbee Dep., RE 22-2, Page ID # 381).   As of November 9, 2020 Frisbee had knowledge of Smith's release to

return to work allowing him to work 12 hours a day or 55 hours per week, but citing overtime and stand-by requirements Newport Utilities did not allow Smith to return to work. (Frisbee Dep., RE 22-2, Page ID # 381).

**4.      Newport Utilities did not sustain any hardship related to Smith being on medical leave from November up to the date of termination, May 11, 2021.**

During Smith's medical leave in 2020 and up to May 11, 2021, Newport Utilities was not required nor did it hire any additional Electrical Division staff to fill-in or replace Smith in the Bucket Foreman job. (Frisbee Dep., RE 22-2, Page ID # 368, 369, 381, 382).  Lineman are qualified to work on the bucket truck, and did so during Smith's medical leave from August 2020 through May 2021. (Frisbee Dep., RE 22-2, Page ID # 382).  Newport Utilities received no employee complaints of having to work excessive overtime during Smith's medical leave in 2020. (Frisbee Dep., RE 22-2, Page ID # 369).

During Smith's medical leave from November 2020 up through May 2021, Newport Utilities assigned existing employee Linemen and journeyman Linemen to fill-in and serve in Smith's absence. (Frisbee Dep., RE 22-2, Page ID # 382). Newport Utilities' journeyman Linemen are qualified and do step up when needed to serve as Bucket Foremen. (Frisbee Dep., RE 22-2, Page ID # 382, 383).  During the time Smith was absent from work on medical leave, there were no services lost

to Newport Utilities customers. (Williamson Dep., RE 22-4, Page ID # 442). During 2020 and 2021 Newport Utilities maintained a contract with Service Electric that could assist Newport Utilities with its electrical work and repairs as a result of large storms and to assist in regaining service to the community, but Newport Utilities was not required to request those services during 2020 and 2021. (Williamson Dep., RE 22-4, Page ID # 444, 445).

**5.     Dr. Bishop's April 27, 2021 fitness for duty evaluation removed the restriction regarding operation of utility vehicles requiring CDL and operating power equipment, etc.**

On April 27, 2021, Dr. Bishop conducted a fitness for duty evaluation of Smith noting his EEG was negative for seizure activity and that since being off work, getting regular sleep he had not had any further episodes, and was no longer on anti-seizure medication, and the neurologist cleared Smith for driving his personal vehicle and utility vehicles. (Frisbee Dep., RE 22-2, Page ID # 384-388, 416-418).  Dr. Bishop's April 27, 2021 Examination Report received by Newport Utilities included the recommendation that Smith "can perform the essential job functions [Bucket Foreman] with the following accommodations: No standby work. Do not exceed hours of 40 hours per week. Additional Comments: This restriction can be re-evaluated in six months or sooner if needed." (Smith Dep., RE 22-1, Page ID # 336).  Dr. Bishop's April 27, 2021 restrictions did not disqualify

Smith from driving or operating utility vehicles requiring a CDL or from operating power equipment. (Smith Dep., RE 22-1, Page ID # 336). Smith could perform the Bucket Foreman duties pursuant to both Dr. Bishop and Dr. Conway. (Smith Dep., RE 22-1, Page ID # 324-325).

**6.    Newport Utilities did not consider Dr. Arvo Kanna's report or opinion in its decision to terminate/separate Smith.**

Notedly, as of the May 11, 2021 date of Smith's termination, Newport Utilities' Frisbee did not consider or even possess Dr. Arvo Kanna's Report, completed Disability Application or any of Dr. Kanna's documented work restrictions of Smith. (Frisbee Dep., RE 22-2, Page ID # 393).

**7.    Newport Utilities failed to provide Smith reasonable accommodation to work.**

Frisbee knew during the period of August 6, 2020 up to the date of Smith's "retirement" effective May 31, 2021 that Smith wanted to return to work with Newport Utilities. (Frisbee Dep., RE 22-2, Page ID # 363, 364). Frisbee and Newport Utilities were not aware of Smith ever hurting himself or a coworker or a customer or any member of the public as a result of having a staring spell or any episode. (Frisbee Dep., RE 22-2, Page ID # 392).

Standby work for Linemen and Bucket Foremen is scheduled for only a one week period every seven weeks, and during that one week the employees on

standby may work no overtime, or a little overtime. (Frisbee Dep., RE 22-2, Page ID # 389, 390). Unless there is a major storm there is very little overtime required of the Lineman and Bucket Foreman. (Frisbee Dep., RE 22-2, Page ID # 390). On occasion Newport Utilities has had the assistance of surrounding utility companies come into its area to help with restoration efforts and on such occasions Newport Utilities limited its employees to working 16 hour days. (Frisbee Dep., RE 22-2, Page ID # 390, 391).

The employees working in Newport Utilities' Electrical Division historically work more standby than employees in other divisions; however, if an employee does not want to work their standby it's voluntary whether you work or not and the employee can get others to work their standby and not be required to work it. (Woods Dep., RE 22-3, Page ID # 431, 432; Williamson Dep., RE 22-4, Page ID # 439). Newport Utilities allowed Groundsmen, Linemen and Bucket Foremen to work each other's overtime and standby with the only requirement of telling their foreman supervisor of the arrangement between employees. (Smith Dep., RE 22-1, Page ID # 303, 304). Any Newport Utilities Electrical Division employee who does not want to work their standby and allow another employee to work it received no disciplinary action for not working assigned standby or overtime. (Woods Dep., RE 22-3, Page ID # 432) Newport Utilities allowed its employees to

work one another's overtime in the same manner it allowed its employees to work one another's standby work. (Williamson Dep., RE 22-4, Page ID # 439).

At the conclusion of Smith's extended medical leave in April 2021, there were four positions available with Newport Utilities.  Two Lineman positions, one Wastewater Maintenance position, and one Customer Service position. (Frisbee Dep., RE 22-2, Page ID # 396).  As of May 11, 2021 Newport Utilities had the following open positions: Wastewater Maintenance Technician, which required standby and overtime, but those were less frequent requirements than the Bucket Foreman or Lineman. (Frisbee Dep., RE 22-2, Page ID # 395, 396).  As of May 11, 2021 Newport Utilities had an open Lineman position and Smith's open Bucket Foreman position. (Frisbee Dep., RE 22-2, Page ID # 399).  As of May 11, 2021 Newport Utilities had an open Customer Service Representative position that required work on a computer, paperwork and forms, and with some training if an individual can operate a laptop, they could perform the Customer Service Representative job. (Frisbee Dep., RE 22-2, Page ID # 396, 397).  Frisbee did not have any discussions with Smith regarding the open Customer Service Representative job or the Wastewater Maintenance position or the open Bucket Foreman and the journeyman Lineman positions. (Frisbee Dep., RE 22-2, Page ID # 399).  At the time Smith was offered the option to accept his retirement eligibility, Newport preemptively reviewed available positions within the

organization and determined that none were available that either met his restrictions or qualifications. (Smith Dep., RE 22-1, Page ID # 337-338; Frisbee Dep., RE 17-2, Page ID # 210-219).

In May 2021, Newport Utilities excluded Smith from consideration for the open Bucket Foreman and the open journeyman Lineman positions because of standby and overtime restrictions. (Frisbee Dep., RE 22-2, Page ID # 399). Customer service representatives could go a month or two without working any overtime. (Frisbee Dep., RE 22-2, Page ID # 401). Frisbee excluded Smith from the Customer Service Representative job because it requires computer skills. (Frisbee Dep., RE 22-2, Page ID # 400). As a Bucket Foreman, Smith maintained a computer tablet in his truck that he used to perform his computer related duties, including data entry, work orders and other data without any issues. (Frisbee Dep., RE 22-2, Page ID # 397-399). Newport concluded Smith could not perform the Lineman positions safely, and the Wastewater and Customer Service job descriptions similarly required "mandatory" overtime. (Frisbee Dep., RE 22-2, Page ID # 397, 400).

In Newport Utilities' Wastewater Division, the employees are scheduled to work twelve hour shifts. (Denton Dep., RE 22-5, Page ID # 448, 449). Individuals who can work 12-hours straight and up to 55 hours per week could perform Wastewater jobs. (Denton Dep., RE 22-5, Page ID # 450). When a Newport

Utilities Wastewater Maintenance Technician is on standby and dispatch calls the employee to come into work, if the employee either intentionally or unintentionally does not answer dispatch's call, dispatch simply calls the next maintenance technician on the list until the call is answered and that employee goes in and fixes the issue. The employees that do not answer the call do not receive any disciplinary action for not answering the call. (Denton Dep., RE 22-5, Page ID # 452). In 2020 and 2021, Neither Frisbee nor any Newport Managerial employee ever asked Denton, Wastewater Supervisor, if there was work available for Smith in the Wastewater Division. (Denton Dep., RE 22-5, Page ID # 451). Newport Utilities has employed individuals to fill Wastewater Treatment Plant Maintenance Technician positions in 2 - 3 years that include before and after the date of Smith's termination. (Denton Dep., RE 22-5, Page ID # 451).

**8.    In spite of Newport Utilities knowing Smith desires to return to work, his work history and the skill set he possesses, Newport Utilities, without engaging in any interactive dialogue with Smith, sends a letter on May 11, 2021 ending Smith's 33 year employment, with notice of an "option of retiring in lieu of termination," which was devastating to him.**

By letter dated May 11, 2021, Frisbee notified Smith she had received Dr. Bishop's updated restrictions and that Newport Utilities has looked at all available positions for which he would be qualified to perform within those restrictions, with

or without accommodation and the only open positions "you are qualified to perform are Bucket Foreman and journeyman Lineman, however, the ability to work overtime and on standby rotation are essential functions of those positions. So, given your current restrictions, you are unable to perform the essential functions of those positions with or without reasonable accommodation. … In addition, there are no other positions available for which you are qualified to perform with or without reasonable accommodation. … Consequently, your employment with NU will be terminated effective May 31, 2021." (Frisbee Dep., RE 22-2, Page ID # 394; Smith Dep., RE 22-1, Page ID # 337-338).

During April and May 2021, neither Frisbee nor any management member of Newport Utilities ever called or spoke with Smith to discuss his ability, concerns or thoughts about performing Newport Utilities' four (4) open jobs or otherwise engage with Smith in any interactive process with him. (Frisbee Dep., RE 22-2, Page ID # 403, 404). Frisbee admits she did not engage in any interactive process with Smith. (Frisbee Dep., RE 22-2, Page ID # 405). Curtis Williamson, Manager of the Electrical Division of Newport Utilities, did not have any conversations with Smith about any jobs or duties Smith could perform and Williamson was not aware of Smith being offered any other jobs. (Williamson Dep., RE 22-2, Page ID # 446).

Smith's immediate supervisor, Kevin Woods, was not involved in Newport Utilities' decision to terminate Smith's employment or provide him with the option to retire. (Woods Dep., RE 22-3, Page ID # 429). Prior to Smith's termination/ retirement in May 2021, no one with Newport Utilities asked Woods if he had any work available for Smith. (Woods Dep., RE 22-3, Page ID # 430). Williamson did not review Smith's work restrictions in 2021 and never spoke with Smith regarding his restrictions or return to work. (Williamson Dep., RE 22-4, Page ID # 440, 441).

## SUMMARY OF ARGUMENT

A jury could reasonably conclude from the record evidence that Newport Utilities discriminated against Smith because of his disability in violation of the ADA.

A jury could reasonably conclude that Newport Utilities' position that Smith posed a direct threat is unsupported by the credible evidence.

The District Court resolved material factual disputes against Smith, the non-moving party. The District Court erred in finding that Smith failed to establish that he was qualified to perform his most recent job and other available jobs, with Newport Utilities' affirmative or "having the" burden to establish an accommodation was unduly burdensome. In other words, the District Court erroneously relieved Newport Utilities of its evidentiary burden to show it was an undue burden to accommodate Smith by returning Smith to work up to 12 hours

per day/55 hours per week per Dr. Conway or up to 40 hours per week per Dr. Bishop, and placed that burden on Smith. The District Court further erred in making this finding because the undisputed evidence shows the Newport Utilities employees are not subject to and have not received any disciplinary action for not taking calls from Newport Utilities or otherwise working assigned standby and overtime hours.

The District Court erroneously relieved Newport Utilities from its statutory obligation to engage in the interactive process with Smith. Newport Utilities, including its managerial members, Frisbee, Williamson and Woods each admitted Smith was not spoken to prior to receipt of the May 11, 2021 letter separating his employment. A reasonable juror could conclude Newport Utilities failed in the interactive process, which is direct evidence of ADA discrimination. The District Court shielded Newport Utilities from its liability to Smith for failing to interact and have dialog with him prior to delivery of the letter giving Smith "…the option to retire in lieu of termination." The District Court erred in concluding otherwise.

The relief requested is that this case should be remanded to the lower Court with instructions to OVERRULE the Motion for Summary Judgment filed by Newport Utilities and to allow the case to proceed to trial by jury.

# ARGUMENT

## I.    Standard of Review

This Honorable Court reviews the granting of summary Judgment de novo. Bentkowski v. Scene Magazine, 637 F.3d 689, 693 (6th Cir. 2011). All sections of the brief and argument should therefore be reviewed de novo.

## II.    The District Court Erred By Weighing The Evidence and Concluding That Smith Was Not Otherwise Qualified For Employment With Newport Utilities As Smith Posed A "Direct Threat Of Harm  To Himself And Others,"  And That Newport Utilities Could Not Have Made A Reasonable Accommodation That Would Eliminate Smith's Direct Threat of Harm Because of the Essential Functions of "The Position," And That Newport Utilities "Clearly" Satisfied It's Obligation of Engaging In The Interactive Process With Smith, Thus Granting Summary Judgment On Smith's Disability Discrimination Claim, As A Jury Could Reasonably Conclude That Newport Utilities Discriminated Against Smith Based On His Disability, And Refused To Accommodate Smith, And Did Not Engage In the Interactive Process As Required By The Americans with Disabilities Act.

<u>Issues Presented for Review and Argument</u>

1.    A District Court Must, in evaluating a Motion for Summary Judgment, Make all Reasonable Inferences Consistent with the Evidence and

**in Favor of the Nonmoving Party and Refrain from Weighing Evidence to reach its Conclusions.**

A Court evaluating a Motion for Summary Judgment "must view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). At the summary judgment stage, a Court does not "weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**2.    A Reasonable Inference of the evidence is that Smith was not a Direct Threat of Harm to himself or others based on the medical opinions in possession of and/or actually considered by Newport Utilities as of the May 11, 2021 separation of Smith's employment, thus the facts do not support Summary Judgment.**

The District Court offered in its opinion that Dr. Conway advised the Defendant that he and a specialist had evaluated Smith and that Smith was released to work. (Order, RE 31, Page ID # 607).  The District Court also supports its finding of a direct threat on Dr. Arvo Kanna's (neurologist) March 2021 report in Smith's application for long-term disability benefits. (Order, RE 31, Page ID # 607, 608).  The District Court found Newport Utilities relied on the "objective

advice" of "multiple medical providers," referring to both Drs. Bishop and Kanna. (Order, RE 31, Page ID # 608). The District Court also considered after-acquired evidence of Smith experiencing "approximately ten more seizures at random times" since his [involuntary] "retirement" in May, 2021. (Order, RE 31, Page ID # 608, 609). The District Court noted Dr. Kanna "reported" Smith was restricted from operating a vehicle requiring a CDL license for at least two years and that Smith could not work more than thirty-two hours in one week. (Id.).

With the exception of Dr. Conway releasing Smith to return to work in both 2019 and 2020, the aforementioned cornerstone facts of the District Court's direct threat conclusion contradict the evidence in the record. Initially, as of May 11, 2021, the date of Smith's termination, Newport Utilities' decision makers did not consider or even possess Dr. Arvo Kanna's report, completed Disability Application, or work restrictions of Smith. (Frisbee Dep., RE 22-2, Page ID # 393). Notably, Dr. Kanna's Disability Application of Smith, does not state Smith "could not work more than thirty-two hours in one week," as considered by the District Court. (Order, RE 31 Page ID # 608). Instead, the Disability Application completed by Dr. Kanna states Smith could work up to 32 hours of overtime per week and 72 hours of total work per week. (Smith Dep., RE 22-1, Page ID # 329-335).

Next, Dr. Bishop's April 27, 2021 Examination Report requested and received by Newport Utilities prior to its termination decision clearly communicated that Smith "can perform the essential job functions [Bucket Foreman job addressed only] with only 2 restrictions: No standby work and can work 40 hours per week; and This restriction can be re-evaluated in six months or sooner if needed." (Smith Dep., RE 22-1, Page ID # 336).  As of April 27, 2021, Dr. Bishop did not restrict Smith from operating vehicles requiring a CDL. (Id.).

As of the May 11, 2021 termination date, the only evidence Newport Utilities' decision maker(s) had of Smith's seizure history since they placed him on medical leave in November 2019, was Dr. Bishop's April 27, 2021 Fitness for Duty report where the doctor documented: that Smith's EEG was negative for seizure activity and that since being off work, getting regular sleep Smith had not had any further episodes, and was no longer on anti-seizure medication and the neurologist cleared Smith for driving his personal vehicle and utility vehicles. (Frisbee Dep., RE 22-2, Page ID # 384-388, 416-418).

Further, it should not be contested that as of the May 11, 2021 termination date, Newport Utilities had no knowledge that after Smith's "retirement" on May 11, 2021 that he experienced "approximately ten more seizures."  The consideration of a fact that occurs after the wrongful termination is not appropriate

for consideration in an ADA discrimination claim- this fact is beyond a piece of inadmissible after-acquired evidence and cannot support summary judgment.

The evidence shows Newport Utilities had historically accepted Dr. Conway's return to work opinions. (Complaint, Ex. 2, RE 1-2, Page ID # 10; Woods Dep., RE 22-3, Page ID # 428). The evidence before the District Court included Dr. Conway's release of Smith to return to work with no work restrictions except for 12 hours per day, 55 hours a week. (Frisbee Dep., RE 22-2, Page ID # 371, 372, 414-415).

An employer cannot "disqualify an applicant simply because of a slightly increased risk of harm[,]…and the risk must be highly probable and the harm must be substantial. Siewertsen v. Worthington Indus. Inc., 783 F. App'x 563 (6th Cir. 2019)(*citing* Backhaus v. Gen. Motors LLC, 54 F. Supp. 3d 741, 751 (E.D. Mich. 2014)). Despite the aforementioned evidence, the District Court concluded in finding a direct threat existed, that, "…it is likely that Plaintiff would suffer more episodes while working if he remained employed with Defendant." (Order, RE 31 Page ID # 610). "Likely" is a far distance from the ADA requirement of imminent threat of the potential harm and none of the doctors addressed this issue. The decision makers at Newport Utilities are likewise not medical doctors. However, Newport Utilities did have knowledge of Smith's episodes since 2009-2010, yet

had determined him otherwise qualified to work. (Smith Dep., RE 22-1, Page ID # 312, 313; Complaint, Ex. 2, RE 1-2, Page ID # 10).

**3.    Under <u>Fisher v. Nissan North America, Inc.</u>, 951 F.3d 409 (6th Cir. 2020), the Failure to Accommodate Claim shows Direct Evidence of Discrimination, as Newport Utilities violated the ADA by failing: (i) to provide Smith reasonable accommodation, and (ii) failed to engage in any interactive process before the termination ("retirement") of Smith, thus a bar to summary judgment.**

**(i)    Newport Utilities Failed to Reasonably Accommodate Smith.**

The record maintains substantial evidence that Smith satisfies the direct method of proof that he is a person with a disability (not a contested issue at hand), is qualified for the essential functions of the Bucket Foreman job he had performed for years (Per Dr. Bishop's and Dr. Conway's reports referenced above), as well as the available jobs of Lineman, Groundsman, Wastewater Maintenance Technician and Customer Service Representative, with the elimination of Newport Utilities' purported essential job requirement of working standby, and limiting or eliminating overtime (depending on the use of Dr. Conway's or Dr. Bishop's restrictions noted above). <u>Ferrari v. Ford Motor Co.</u>, 826 F.3d 885, 891 (6th Cir. 2016)(quoting <u>Monette v. Elec. Data Sys. Corp.</u>, 90 F.3d 1173, 1186 (6th Cir. 1996)). The proof shows Smith had successfully worked many different jobs

during his 33 year career with Newport Utilities (Frisbee Dep., RE 22-2, Page ID # 340, 396, 397),

The only return to work hurdle Newport Utilities presented to the District Court was standby and overtime work, related to the Bucket Foreman job, as it is maintained those are "essential functions" of the job, and "there were no other positions available for which he [Smith] was qualified." (Order, RE 31, Page ID # 611, 612).

The District Court erred by not considering Newport Utilities did not practically require the Bucket Foreman or Lineman to work assigned standby (only scheduled once every 7 weeks) or overtime- such employees could simply not accept the telephone call to work or arrange for another qualified employee to work their assigned standby and/or overtime. (Smith Dep., RE 22-1, Page ID # 303, 304; Frisbee Dep., RE 22-2, Page ID # 390; Woods Dep., RE 22-3, Page ID # 431, 432; Williamson Dep., RE 22-4, Page ID # 439).  Bucket Foreman and Lineman who chose to have other employees work their standby or overtime, or who simply do not answer the call from Newport Utilities to report to work, are not subject to any disciplinary action or "consequence" of not reporting for the standby or overtime work. (Woods Dep., RE 22-3, Page ID # 432).

The District Court properly referenced, but erred in its application, of 29 C.F.R. § 1630.2(n)(3), that sets forth evidence that a particular function is or is not

essential, and includes, but is not limited to: (iv) the consequences of not requiring the incumbent to perform the function; (vi) the work experience of past incumbents in the job; and/or (vii) the current work experience of incumbents in similar jobs. (Id.).  In the case at hand, the standby and overtime function cannot be tabbed as essential by definition and by view of the evidence.  At a minimum, this is a disputed issue of material fact for a jury to determine and summary judgment was in error.

Smith maintained he was qualified to perform the Newport Utilities open and available jobs of Lineman (2 positions were open), Wastewater Maintenance Technician and Customer Service Representative as of May 11, 2021. (Frisbee Dep., RE 22-2, Page ID # 395, 396, 399).  Newport Utilities unilaterally concluded Smith was not qualified for the Lineman and Wastewater Maintenance Technician positions due to the alleged standby and overtime "requirements," despite the evidence showing such work was either optional without consequence or was required seldom. (Frisbee Dep., RE 22-2, Page ID # 399; Denton Dep., RE 22-5, Page ID # 448, 449, 450, 452).  Newport Utilities did not consult with its Wastewater Supervisor to inquire if work was available for Smith in that division, despite recent hiring for the division in the years after Smith's firing. (Denton Dep., RE 22-5, Page ID # 451).  Newport Utilities unilaterally excluded Smith from the open Customer Service Representative (CSR) position in May, 2021 on

the basis that the position required some computer skills, despite Smith's prior duties as a Bucket Foreman including working with a computer in his work truck on a daily basis, completing data entry tasks, work orders, etc. (Frisbee Dep., RE 22-2, Page ID # 396-399, 400).  Further, Newport Utilities did not offer Smith any training that could have satisfied them he was qualified for the CSR position. (Frisbee Dep., RE 22-2, Page ID # 396, 397).  Again, at a minimum, Smith's qualifications to perform these open jobs that require little to no overtime is a question for a jury, thus, summary judgment against Smith was in error.

**(ii)  The Direct Evidence test required the District Court to find Newport Utilities' firing of Smith without engaging in an Interactive Dialogue regarding available jobs, modifications to jobs and schedules, and without informing Smith of the contemplated firing violated the Americans with Disabilities Act.**

Newport Utilities knew Smith desired to return to work.  This is uncontested and is evidence of his request for accommodation- in 2019 and 2020, up to the date of his firing on May 11, 2021. (Frisbee Dep., RE 22-2, Page ID # 363, 364).  Once the employee requests a reasonable accommodation, or the employer identifies the need for an accommodation, the employer has a duty and must engage in the interactive process. Hostettler v. College of Wooster, 895 F.3d 844, 857 (6th Cir. 2018).  From that point, "both parties have a duty to participate in good faith."

Kleiber v. Honda of Am. Mfg., 485 F.3d 862, 871 (6th Cir. 2007). Specifically, the employer must "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Hostettler, 895 F.3d at 857. This Court has held that, "…an employer who 'determine(s) what accommodation it [is] willing to offer before ever speaking with' the employee does not participate in good faith." Mosby-Meachem v. Memphis Light, Gas & Water Div., 883 F.3d 595, 606 (6th Cir. 2018).

This Court found the District Court's summary judgment in favor the employer improper in Hostettler even though the employer met with the employee four times the employer still may not have satisfied its duty to engage in the interactive process, stating the nature of the discussions during those meetings is at the heart of the issue- how the parties are willing to engage in the interactive process. Hostettler, 895 F.3d at 857, 858.

At a minimum an employer is required to "show how the accommodation would cause an undue hardship or that the challenged job criterion is essential. Fisher v. Nissan North America, Inc., 951 F.3d 409, 422 (6th Cir. 2020) (citations omitted).

Newport Utilities admits that prior to the delivery of their May 11, 2021 letter to Smith giving him the option to retire in lieu of termination (a firing) they did not engage in any dialogue with Smith about any reasonable accommodation or

him returning to work in his former, modified or other, capacity. (Frisbee Dep., RE 22-2, Page ID # 394; Smith Dep., RE 22-1, Page ID # 337-338).  Further, Smith's supervisor Woods testified he was not involved in the decision to terminate or offer retirement to Smith, nor was he ever consulted by Newport Utilities if he had any work available for Smith. (Woods Dep., RE 22-3, Page ID # 429).  Despite Newport Utilities maintaining no jobs were available in the Wastewater or the Electrical divisions, the managers of each division did not have any discussions with Smith nor did they know of his restrictions. (Williamson Dep., RE 22-4, Page ID # 440, 441, 446; Denton Dep., RE 22-5, Page ID # 451).

## CONCLUSION

For the reasons explained above, Larry S. Smith respectfully requests this Court to reverse the District Court's grant of summary judgment to Newport Utilities and REMAND to the District Court for trial on the issues of disability discrimination in violation of the Americans with Disabilities Act.

Respectfully submitted,

 /s/ Ben W. Hooper, III
**Ben W. Hooper, III** (BPR #13831)
CAMPBELL & HOOPER
335 East Main Street
Newport, Tennessee 37821
(423) 623-3082
bwh3rd@yahoo.com

 /s/ Jeffrey C. Taylor
**Jeffrey C. Taylor** (BPR #13436)
TAYLOR LAW FIRM
365 West Third North Street
Morristown, Tennessee 37814
(423) 586-6812
jeff@taylorlawfirmtn.com

Attorneys for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,913 words, as determined by the word-count function of Microsoft Word.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: August 27, 2024

*/s/ Jeffrey C. Taylor*
**Jeffrey C. Taylor**

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served via regular U.S. Mail.  Parties may access this filing through the Court's electronic filing system.

**Mark E. Stamelos, Esq.**
**Paige M. Lyle, Esq.**
FORDHARRISON LLP
150 Third Ave South, Suite 2010
Nashville, Tennessee 37201
mstamelos@fordharrison.com
plyle@fordharrison.com

*/s/ Jeffrey C. Taylor*
**Jeffrey C. Taylor**

**ADDENDUM**
**Designation of Relevant District Court Documents**

| Document Title | Record Entry (RE) | Page ID # |
|---|---|---|
| Complaint | 1 | 5 |
| Complaint, Ex. 2 | 1-2 | 10 |
| Deposition Excerpt – Larry Smith | 17-1 | 105-106<br>111<br>113<br>120<br>128<br>138-141 |
| Deposition Excerpt – Connie Frisbee | 17-2 | 210-219 |
| Deposition Excerpt – Larry Smith | 22-1 | 299-300<br>303-308<br>312-313<br>317-319<br>324-338 |
| Deposition Excerpt – Connie Frisbee | 22-2 | 340<br>342-361<br>363-378<br>380-401<br>403-418 |
| Deposition Excerpt – Kevin Woods | 22-3 | 423<br>428-432 |
| Deposition Excerpt – Curtis Williamson | 22-4 | 439-442<br>444-446 |
| Deposition Excerpt – James Denton | 22-5 | 448-452 |
| Memorandum Opinion and Order (Order) | 31 | 600<br>607-612 |
| Notice of Appeal | 34 | 651-652 |